UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD B. RAMOS,

                                Plaintiff,        **No. 6:16-cv-06569(MAT)**
                                                  **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                Defendant.

_____

## INTRODUCTION

    Represented by counsel, Richard B. Ramos ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner")[1] denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

    On December 5, 2012, Plaintiff filed a Title II application for DIB, alleging a disability onset date of April 25, 2011. The claim was denied initially and on reconsideration. Plaintiff requested a hearing, which was held via videoconference before administrative law judge Angela Miranda ("the ALJ") on May 22,

_____

[1]
    Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

2014. Plaintiff appeared with his attorney in Rochester, New York, and testified, as did impartial vocational expert Linda Ebersold ("the VE"). On November 15, 2014, the ALJ issued an unfavorable decision. (T.18-31).[2]

Plaintiff's request for review was denied by the Appeals Council on June 16, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's decision is reversed and the matter remanded solely for calculation and payment of benefits.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2016. The ALJ found that Plaintiff's earnings record supported a finding that he

---

[2]
Citations to "T." in parentheses refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

had not engaged in substantial gainful activity since April 25, 2011,[3] the alleged onset date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: osteoarthritis of the left knee and residual effect of surgically corrected torn meniscus, degenerative disc disease ("DDD") of the lumbar spine, obesity, anxiety, and depression. The ALJ found that Plaintiff's hypertension, edema, and sinus tachycardia are well-controlled by medication and not "severe." As to Plaintiff's alleged shoulder dysfunction, resulting from a fall, the ALJ found that it is not a medically determinable impairment, giving the absence of objective medical evidence to diagnose the condition and lack of treatment to address it.

At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they do not meet or medically equal the severity of a listed impairment. In particular, the ALJ considered Listing 1.02, and found that the record failed to show that Plaintiff's osteoarthritis of the left knee has caused gross anatomical deformity resulting in an inability to ambulate effectively. The ALJ also considered Listing 1.04, and found that the record failed to show that Plaintiff's DDD of the lumbar spine

---

[3]

Plaintiff last worked for 11 years as a laborer; his employment ended after a fall at work on April 27, 2011, in which he twisted his left knee. Following multiple imaging studies, he underwent arthroscopic surgery on his left knee in August of 2011.

causes evidence of nerve root compression, spinal arachnoiditis or pseudoclaudication. The ALJ also found that Plaintiff's mental impairments do not meet or equal Listings 12.04 and 12.06 because Plaintiff only has "mild" restrictions in activities of daily living and social functioning; "moderate" limitations in maintaining concentration, persistence, or pace; and has experienced no episodes of decompensation.

Prior to proceeding to step four, the ALJ noted that Plaintiff is 6'2" and 320 pounds, which yields a body mass index of 41.1 and places him in the "obese" range. The ALJ accordingly factored Plaintiff's obesity into the residual functional capacity ("RFC") assessment. The ALJ then determined that Plaintiff has the RFC to occasionally lift and carry 10 pounds and to frequently lift and carry less than 10 pounds; stand and/or walk for 2 hours in an 8-hour workday; sit for 6-8 hours in an 8-hour workday and may require the ability to change positions while at work, but this can be met at normal break or meal periods or without leaving the workstation; perform unlimited pushing and pulling up to his capacity for lifting and carrying; occasionally operate foot controls; occasionally climb stairs and ramps; occasionally stoop, kneel, crouch, and crawl; frequently balance; understand, remember and carry out simple, routine tasks; use common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to do these tasks consistently with

the demands of a normal workday schedule; appropriately interact with coworkers, supervisors, and the general public; identify and avoid normal workplace hazards; and adapt to routine changes in the workplace.

At step four, the ALJ determined that Plaintiff was 41 years-old on the onset date, with a limited education and the ability to communicate in English. In light of his RFC, the ALJ found, Plaintiff cannot perform his past relevant work as a building maintenance repairer (Dictionary of Occupational Titles ("DOT") 899.381-010, medium work but actually performed as heavy work, with a specific vocational and preparation ("SVP") of 7); and a door keeper (DOT 329.683-010, medium work, SVP of 2).

At step five, the ALJ relied on the VE's testimony to find that there are other jobs that exist in significant numbers in the national economy and state-wide that Plaintiff can perform, including food and beverage clerk (DOT 209.567-014, sedentary work, SVP of 2); surveillance systems monitor (DOT 379.367-010, sedentary work, SVP of 2); and addresser (DOT 209.587-010, sedentary work, SVP of 2). The ALJ accordingly entered a finding of "not disabled."

## SCOPE OF REVIEW

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.

<u>See</u> 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." <u>Byam v. Barnhart</u>, 336 F.3d 172, 179 (2d Cir. 2003) (citing <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984) (stating that "[f]ailure to apply the correct legal standards is grounds for reversal").

**DISCUSSION**

**I.    Mental Aspect of RFC Assessment Unsupported by Substantial Evidence and Erroneous Weighing of Consultative Psychologist's Opinion (Plaintiff's Point A)**

Plaintiff contends that the "ALJ failed to analyze how his inability to tolerate work stress would impact his ability to work on 'a regular and continuing basis[.]'" (Plaintiff's Brief at 9-10 (citing, <u>inter alia</u>, Social Security Ruling ("SSR") 85-15, Titles II and XVI: Capability to Do Other Work—the Medical-Vocational Rules as a Framework for Evaluation Solely Nonexertional Impairments, 1985 WL 56857 (S.S.A. 1985); SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (S.S.A. July

-6-

2, 1996)). Plaintiff claims that the ALJ erred in failing to make an individualized assessment of his ability to handle work-place stress. (Id. (citing Allen v. Barnhart, 417 F.3d 396, 406-07 (3d Cir. 2005) ("Looking at the record before us, we cannot help but note that certain aspects of Allen's mental disorder—including response to supervision, stress, and the like—would more likely be subjected to an individualized assessment.")).

Plaintiff correctly points out that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15 1985 WL 56857, at *6. Here, consultative psychologist Dr. Yu-Ying Lin opined in his report (T.435-38) that Plaintiff

> can follow and understand simple directions and instructions. He can perform simple tasks independently. *He cannot maintain attention and concentration.* He is able to maintain a regular schedule. He can learn new tasks. He can perform complex tasks with supervision. He can make appropriate decisions. He can relate adequately with others. *He cannot appropriately deal with stress. Difficulties are caused by stress-related problems.*

(T.438) (emphases supplied). The ALJ assigned "some weight" to the portion of Dr. Lin's report "which determined that the [Plaintiff] can follow and understand simple directions and instructions and can perform simple tasks independently. Dr. Lin further determined that the claimant can maintain a regular schedule, make appropriate decisions and relate adequately with others." (T.29 (citation omitted)).

The ALJ did not discuss the weight given to the aspect of Dr. Lin's medical source statement pertaining to Plaintiff's ability to deal with stress. This indicates that the ALJ improperly cherry-picked from Dr. Lin's opinion only the information that purportedly buttresses his RFC assessment. Beck v. Colvin, No. 6:13-CV-6014 MAT, 2014 WL 1837611, at *13 (W.D.N.Y. May 8, 2014) (citing Rodriguez v. Astrue, No. 12-CV-4103, 2013 WL 1282363, at *16 (E.D.N.Y. Mar. 28, 2013) ("Given the ALJ's duty to consider Rodriguez's account of her limitations against the background of the full record, and his obligation to develop that record where necessary, the ALJ's selective reading of the evidence was improper."); further citation omitted)).

The Commissioner counters by pointing to Dr. Lin's comment at the end of his report that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself this *does not appear to be significant enough to interfere with [Plaintiff]'s ability to function on a daily basis*." (T.438; emphasis supplied). The Commissioner argues that this constitutes substantial evidence for the mental portion of the RFC assessment and shows that Dr. Lin did not believe Plaintiff was precluded from full-time employment. However, such an explanation was not given by the ALJ, and "this Court is not permitted to accept the Commissioner's post-hoc rationalizations for the ALJ's determination." Marthe v. Colvin, No. 6:15-CV-06436(MAT), 2016 WL 3514126, at *8 (W.D.N.Y. June 28,

2016) (citing <u>Petersen v. Astrue</u>, 2 F. Supp.3d 223, 234 (N.D.N.Y. 2012) ("[T]his Court may not 'create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'") (quotation omitted; citing, <u>inter alia</u>, <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency.")). Furthermore, this statement, compared to the specific limitations assigned by Dr. Lin in the preceding paragraph, is vague. It simply refers to Plaintiff's "ability to function on a daily basis" and does not specify the context of functioning (e.g., competitive full-time work environment) and could equally refer to Plaintiff's daily functioning in his current situation (unemployed and living a fairly structured life).

## II.  Error in Weighing Treating Physician's Opinion (Plaintiff's Point B)

Plaintiff contends that the ALJ committed reversible error in his weighing the  pain limitation questionnaire  provided by his treating physician, Dr. Clifford Ameduri, on February 23, 2014. Dr. Ameduri opined, in relevant part, that pain would interfere with Plaintiff's concentration, persistence or pace, and would negatively impact his productivity by greater than 20-25% on a "bad day." (T.625). Dr. Ameduri estimated that Plaintiff would miss work at least 2 full days per month due to his pain. (<u>Id.</u>).

When determining how much weight to afford any medical opinion in the record, "[r]egardless of its source," an ALJ must consider certain factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c). The Second Circuit does not require ALJs to review explicitly each factor provided in 20 C.F.R. § 404.1527(c), so long as the reviewing court can "conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight [the ALJ] gives to the treating source's opinion." Halloran, 362 F.3d at 32.

Here, the ALJ assigned "[s]ome weight" to Dr. Ameduri's opinion. The ALJ agreed with Dr. Ameduri's statement that Plaintiff "could lift and carry up to 10 pounds, occasionally engage in the operation of foot controls and occasionally climb stairs and ramps[.]" (T.28). However, the ALJ stated, "only some weight is given" to Dr. Ameduri's opinion "as [the doctor] further determined that [Plaintiff] can never engage in work involving balancing, stooping, kneeling, crouching or crawling and can occasionally

engage in pushing and pulling" and "further determined that [Plaintiff]'s pain restricts him from performing his past work and interferes with his concentration, persistence and pace" and "would cause [him] to miss work at least two full days per month, would likely cause significant interference with social relationships at work and . . . will negatively impact productivity by greater than 20-25 percent." (T.28 (citation omitted)). The ALJ stated that "the evidence as a whole does not support this determination, as it contrasts sharply with the other evidence of record, which renders it less persuasive." (T.28-29). This circular explanation does not constitute a "good reason" for discounting Dr. Ameduri's treating source opinion that Plaintiff can never balance, stoop, kneel, crouch, or crawl; can occasionally engage in pushing and pulling; and is highly limited with regard to his productivity and attendance due to pain. See, e.g., Wilson v. Colvin, 213 F. Supp.3d 478, 487-88 (W.D.N.Y. 2016) ("The Court is unable to discern what evidence (apart from the 'modest' MRI findings) the ALJ found to be contradictory to Dr. Harris' opinions, because the ALJ concluded without explanation that Dr. Harris' opinions were 'wholly inconsistent with the entire record.' This does not constitute a 'good reason' to reject a treating source opinion.") (citations omitted).

Here, Dr. Ameduri's opinion that Plaintiff is precluded from balancing, stooping, kneeling, crouching, or crawling is not

inconsistent with his own treatment notes. On March 15, 2013, Dr. Ameduri saw Plaintiff at Rochester Brain and Spine for evaluation of his back pain, which Plaintiff described as radiating down his left buttock into his sciatic notch. (T.478) Plaintiff rated the pain as a 7 on a scale of 1 to 10, and Dr. Ameduri observed paraspinal spasm in the deep paraspinal muscles L4, L5, and S1, as well as positive straight leg raise on the left for back pain at 30 degrees. (T 479) Dr. Ameduri also observed that Plaintiff walked with a "markedly antalgic gait." (T.479). Diagnoses were backache, intervertebral disc degeneration (lumbar), and neuritis or radiculitis (thoracic or lumbosacral). (T.479-80) Dr. Ameduri ordered a lumbar spine MRI and an EMG evaluation of the left lower extremity. (T.480). After an EMG study dated April 11, 2013, showed mild bilateral S1 radiculopathy (T. 489), Plaintiff received an interlaminar lumbar epidural steroid injection on May 29, 2013. (T.511). However, on June 27, 2013, Plaintiff reported that the epidural injection provided only temporary relief and he was discouraged by the results. (T.572).

Nor is Dr. Ameduri's opinion inconsistent with the January 22, 2013 opinion of consultative physician Dr. Karl Eurenius (T.439-442), which the ALJ gave almost no weight. On examination, Dr. Eurenius observed clinical signs of back pain and knee pain. Plaintiff's lumbar spine showed flexion to 30 degrees with pain and tenderness in the low-mid back; he could only extend zero degrees

-12-

without pain; lateral flexion and rotation were limited to approximately 20 degrees in each direction with pain in the low-mid back; supine straight-leg raising ("SLR") was positive at 30 degrees bilaterally with pain in the low-mid back; sitting SLR was positive at 90 degrees bilaterally with pain in the ipsilateral knee; and both knees were thickened and tender, just medially and below the patella bilaterally. Dr. Eurenius noted that Plaintiff walked with a limp favoring the left leg, has difficulty walking on toes due to bilateral knee pain and back pain, and can squat only one quarter of the way due to primarily left, and to a lesser extent, right knee pain. Dr. Eurenius also observed that Plaintiff uses a cane "which he holds in the right arm" and "uses . . . primary [sic] for pain." (T.441). Dr. Eurenius noted that the cane was provided by Dr. Maloney and "seem[ed] to be helpful and possibly necessary in relieving pain while walking." (Id.).

Dr. Ameduri's assessment regarding the limiting effects of Plaintiff's pain on his productivity and attendance was congruent with the aspects of Dr. Lin's medical source statement that the ALJ ignored, namely, that Plaintiff cannot maintain attention and concentration and cannot appropriately deal with stress. During his clinical examination, Dr. Lin noted that Plaintiff's aspect and mood were dysphoric. Plaintiff's attention and concentration were moderately due to anxiety in the evaluation and possibly cognitive change, in that Plaintiff could perform simple and calculation, but

answered 20, 17, 14, 11, 8, to serial 3s. Dr. Lin indicated that Plaintiff's recent and remote memory skills also appeared to be impaired due to nervousness in the evaluation and possibly reported cognitive change.[4]

The ALJ also improperly speculated that Dr. Ameduri's opinion was tainted by bias in Plaintiff's favor, stating that "as a treating source, the treating physician was possibly sympathetic to [Plaintiff] and appeared to have relied heavily on the subjective reports of symptoms and limitations provided by [Plaintiff]." (T.29). See SSR 82-62, TITLES II AND XVI: A DISABILITY CLAIMANT'S CAPACITY TO DO PAST RELEVANT WORK, IN GENERAL, 1982 WL 31386, at *4 (S.S.A. 1982) ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained. . . . Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence.").

## III. Erroneous Credibility Assessment (Plaintiff's Point C)

Plaintiff argues that the ALJ did not provide any valid or legitimate reasons for his credibility finding.

Defendant responds that the ALJ "set forth the legal standard used to determine the credibility of subjective complaints (T.24-25), specifically listed Plaintiff's subjective complaints (T.25),

---

[4]

Plaintiff reported to Dr. Lin that he was having short-term memory difficulties, concentration difficulties, some receptive language difficulty, and word finding difficulties since approximately one year prior to the consultative examination. (T.439).

recounted the medical evidence (T.25-29), assigned weight to the medical assessments (Tr. 28-29), and then concluded that "[a]fter careful consideration of the evidence, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely persuasive for the reasons explained in this decision," and "[b]ased on the entire record, including the testimony of the claimant, . . . the evidence fails to support the claimant's assertions of total disability." (T.29).

Defendant is mistaken as to what constitutes a sufficiently specific credibility analysis that allows "intelligible plenary review of the record[,]" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). Here, "[r]ather than considering Plaintiff's credibility in light of the required regulatory factors, see 20 C.F.R. § 416.929(c)(3)(i)-(vii), the ALJ merely summarized the medical evidence in the record without meaningful analysis of how the medical evidence detracted from Plaintiff's credibility." Harris v. Colvin, 149 F. Supp. 3d 435, 449 (W.D.N.Y. 2016) (citing Kerr v. Astrue, No. 09-CV-01119(GLS)(VEB), 2010 WL 3907121, at *4 (N.D.N.Y. Sept. 7, 2010) ("[T]he ALJ's discussion of the factors was simply a recitation of Plaintiff's testimony without any meaningful analysis of how those factors detracted from her credibility. . . .") (further citation omitted)).

In addition, the ALJ unfairly discredited Plaintiff's credibility on the basis that "the objective findings in this case fail to provide strong support for [his] allegations of disabling symptoms and limitations." (T.25). When the ALJ purported to "[m]ore specifically" explain her finding concerning the objective findings, she stated conclusorily that "the medical findings do not support the existence of limitations greater than the above listed residual functional capacity." (T.25). This type of circular reasoning has been consistently rejected by courts in this Circuit. See Ubiles v. Astrue, No. 11-CV-6340T MAT, 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) ("It is erroneous for an ALJ to find a claimant's statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding.") (collecting cases).

Again, the ALJ erroneously parsed the record and ignored evidence supportive of Plaintiff's claim, in particular, results of objective testing performed by clinical psychologist Dr. Michael J. Kuttner on February 21, 2013, in connection with Plaintiff's Worker's Compensation claim. Dr. Kuttner's impression, after conducting a behavioral pain management evaluation of Plaintiff, was that he was having a "difficult time in managing his work-related injury," and to date had not "responded to conservative management of his pain." (T.474). Dr. Kuttner assessed Plaintiff as "having high levels of misery," and that he is

"suffering the cognitive response to prolonged physical pain which increases negative affective states and pain levels." (Id.). Dr. Kuttner stated that Plaintiff was responding to the work-injury-related loss of functional capacity and endurance pain with an increase in and depression, which consequently were increasing his pain levels and decreasing his tolerance of pain. (T.475). Dr. Kuttner diagnosed Plaintiff with pain disorder with psychological and medical components (ICD-9-CM Diagnosis Code ("ICD Code") 307.89), knee pain (ICD Code 719.46), and low back pain (ICD Code 724.2). Thus, contrary to the ALJ's finding, there were objective findings, from an independent medical examiner, supporting the severity of Plaintiff's pain. That there was a psychological aspect to Plaintiff's subjective estimation of his pain does not give the ALJ license to discredit his testimony. See, e.g., O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003) ("Several doctors suggested that O'Donnell might have been magnifying her pain due to a psychogenic overlay. However, even if true, that would not be a reason to discredit her allegations. An 'ALJ cannot simply ignore . . . medical evidence that [claimant] suffers from pain having its origin in a psychological disorder.'") (quoting Mellon v. Heckler, 739 F.2d 1382, 1383 (8th Cir. 1984) (in turn quoting Reinhart v. Sec'y, 733 F.2d 571, 572-73 (8th Cir. 1984); ellipsis and alteration in original)). Here, the record, including clinical observations by Dr. Eurenius and Dr. Ameduri,

discussed above, and objective psychological testing, indicates that Plaintiff's pain disorder had <u>both</u> medical and psychological components. Nonetheless, even in cases where doctors have been unable to identify a specific physical cause for the amount of pain claimed by a claimant, but it was obvious that the claimant was experiencing great pain, courts have assigned error to ALJs who ignore evidence that the claimant's pain originates in a psychological disorder. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Carradine v. Barnhart</u>, 360 F.3d 751, 755 (7th Cir. 2004) ("[The ALJ] failed to take seriously the possibility that the pain was indeed as severe as Carradine said but that its origin was psychological rather than physical.").

In addition, the ALJ found that Plaintiff's daily activities were inconsistent with Dr. Ameduri's opinion and Plaintiff's own subjective complaints of pain. According to the ALJ, Plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (T.28). The ALJ noted that Plaintiff testified that he is able to prepare simple meals, has a driver's license and is able to drive himself to doctor appointments, has no problems taking care of his personal needs, is able to perform light laundry, enjoys watching sports and reading, and enjoys spending time with his parents and visitors on a daily basis. (<u>Id.</u>). "A claimant's participation in the activities of daily living will not rebut his or her subjective

statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." <u>Polidoro v. Apfel</u>, No. 98 CIV. 2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) (citing <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983). "There is nothing inherent in these activities that proves Plaintiff has the ability to perform '[t]he basic mental demands of competitive, remunerative, unskilled work[, which] include the abilities (on a sustained basis)[,]' SSR 85-15, much less to do so '8 hours a day, for 5 days a week, or an equivalent work schedule[,]'" <u>Harris v. Colvin</u>, 149 F. Supp.3d 435, 445 (W.D.N.Y. 2016) (quoting SSR 96-8p, 1996 WL 374184, at *2).

## IV. Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir. 2004). As discussed above, the ALJ erred in applying the treating physician rule to the opinion offered by brain and spine specialist Dr. Ameduri, and failed to explain

satisfactorily why his opinions were not afforded controlling weight. The ALJ also cherry-picked the record in assessing the opinions of consultative psychologist Dr. Lin and consultative physician Dr. Eurenius; in fact, the ALJ did not give more than some weight to any of the opinions offered by the acceptable medical sources who actually examined Plaintiff. In evaluating Plaintiff's credibility, the ALJ committed multiple errors, including ignoring the results of objective testing to assess the severity of Plaintiff's pain disorder. Had these legal errors not occurred, and had deference been given to the opinion of Plaintiff's treating back specialist, a finding of disability is compelled. See Spielberg v. Barnhart, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . ."). In the present case, further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. See Parker, 626 F.2d at 235.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is legally erroneous and unsupported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed and the matter remanded solely for calculation and payment of benefits. Defendant's motion for judgment on the

pleadings is denied. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     November 15, 2017
           Rochester, New York.